THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
No. 4:07-CV-175-FL

| | |
|---|---|
| CLAUDE MURRAY, JEREMY GEORGE, and KEVIN ANDERSON, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) **MEMORANDUM AND**<br>) **RECOMMENDATION**<br>) |
| AKIMA CORPORATION, | )<br>) |
| Defendant. | ) |

This matter is before the court on defendant's motion for summary judgment pursuant to Rule 56, Fed. R. Civ. P. Plaintiffs have responded to defendant's motion and the matter is ripe for disposition. The parties have not consented to jurisdiction of the magistrate judge; therefore, the motion is considered here as a recommendation to the District Court. *See* 28 U.S.C. § 636(b)(1)(B); *see also* Local Civil Rule 72.3(c), E.D.N.C. For the reasons set forth below, it is recommended that defendant's motion for summary judgment be denied.

## I. PROCEDURAL HISTORY

Plaintiffs Claude Murray ("Murray"), Jeremy George ("George") and Kevin Anderson ("Anderson"), each African-American, initiated this action against AKIMA Corporation ("Defendant" or "AKIMA"), alleging that they have been discriminated against in their employment on the basis of race in violation of 42 U.S.C. § 1981 ("§ 1981"). Defendant filed its Answer [DE-7] on November 26, 2007, generally denying the allegations and raising several affirmative defenses. On June 2, 2008, defendant moved for summary judgment [DE-18]. On

July 22, 2008, plaintiffs filed a Response [DE-24] in opposition to defendant's motion and on August 6, 2008, defendant filed a Reply [DE-27].

## II. STATEMENT OF FACTS

In July 2005, the federal government awarded GENCO Infrastructure Solutions, Inc., ("GENCO") a contract to provide material distribution services at the Defense Distribution Depot ("DDCN") located at the Cherry Point, North Carolina Marine Corps Air Station. Def.'s Mem. in Supp. of Mot. for Summ. J. ("Def's Mem.") at 2; Aff. of William Berotte, Jr. ¶ 2 ("Berotte Aff.") [DE-20-2, Ex. B]; Aff. of Wilbert Castaneda ¶ 2 ("Castaneda Aff.") [DE-20-2, Ex. C]. GENCO then subcontracted certain functions to be performed under the contract to defendant. Berotte Aff. ¶ 2 [DE-20-2, Ex. B]. In particular, GENCO subcontracted the functions of packing, preservation, packaging and marketing ("Triple P&M") to defendant. Dep. of David Christian Taylor at 8:5-6 ("Taylor Dep.") [DE-26-5]. The Triple P&M functions include (1) building boxes for the storage and transport of aircraft parts and blocking and bracing ammunition in an area referred to as the carpentry or "box shop," Taylor Dep. at 20:15-18, 23:15-16; Dep. of Howard Frederick Restel at 3:20-22 ("Restel Dep.") [DE-26-6]; and (2) removing aircraft parts from containers and providing delivery instructions for each part in an area referred to as "d-trash." Taylor Dep. at 13:7-10; Dep. of Claude Andrea Murray ("Murray Dep.") at 19:6-21 [DE-26-3].

Prior to GENCO and AKIMA, from November 2001 to December 2003, the Triple P&M work at the DDCN was performed by Labat-Anderson, Inc. ("Labat"), for whom plaintiffs previously worked. Def.'s Mem. at 2; Murray Dep. at 18:10; Dep. of Jeremy Orlando George ("George Dep.") at 14:19-20 [DE-26-2]; Dep. of Kevin James Anderson ("Anderson Dep.") at 7:10-12. While employed with Labat, Murray worked in d-trash, George worked in d-trash and

2

the box shop, and Anderson packed and preserved aircraft parts. Murray Dep. at 19:4, George Dep. at 23:14, 24:4; Anderson Dep. at 8:7, 18-19. When Labat lost the contract in December 2003, the Defense Logistics Agency ("DLA"), an agency within the United States Department of Defense, provided these services temporarily. *Id.* DLA employed plaintiffs in its Triple P&M operations in positions similar to those performed during their employment with Labat. Murray Dep. at 29:20-23; George Dep. at 24:17-22; Anderson Dep. at 9:18-25. In particular, Murray's primary responsibility at the box shop was packing aircraft blades while George's box shop responsibilities included crating aircraft parts, hauling boxes, blocking and bracing ammunition and performing rigging on the flight line. Murray Dep. at 29:15-19, 58:2-3; George Dep. at 25:6-10. Anderson's duties at the packing and preservation section included packing parts for the CH-46 helicopter and the Harrier jet. Anderson Dep. at 10:18-24, 11:4-6.

Prior to beginning its operation at Cherry Point, representatives from AKIMA (along with GENCO representatives) met with DLA employees, including plaintiffs, to announce that the two companies would be taking over operations. Def.'s Mem. at 3; Murray Dep. at 56:16-17, 90:6-9; George Dep. at 30:19-24; Anderson Dep. at 14:2-3. DLA employees who wished to be employed by defendant were required to complete a job application and undergo an interview with defendant. Def.'s Mem. at 3; Dep. of Wilbert Castaneda at 32:21-22 ("Castaneda Dep.") [DE-26-4]; Murray Dep. at 98:9-11; George Dep. at 32:17-20, 33:1-2. Each of the plaintiffs completed an application and interviewed with defendant. Murray Dep. at 56:23-24; George Dep. at 31:16, 38:5-11; Anderson Dep. at 14:12-19.

Defendant retained the services of Wilbert Castaneda ("Castaneda") to oversee the transition from DLA to AKIMA. Castaneda Dep. at 31:18-20, 32:16-18; Castaneda Aff. ¶ 9. Castaneda's responsibilities included receiving applications, interviewing applicants, observing

3

personnel and operations and hiring employees. Castaneda Dep. at 32:21-22. According to defendant, Castaneda was solely responsible for making the hiring decisions for AKIMA. *Id.* at 40:7-15. Castaneda indicated that in making the hiring decisions he referred to a questionnaire and that all applicants were asked identical questions during the interview process and that he relied on information supplied by Taylor regarding each applicant's performance and attendance history as DLA employees.[1] *Id.* at 38:11-16, 41:5-11. Other testimony indicates however that Castaneda was not responsible for hiring and that he merely performed the job interviews on behalf of AKIMA. Aff. of Howard Restel ("Restel Aff.") at 1. As to Taylor's role, Castaneda explained that Taylor bore the responsibility for determining the particular Triple P&M function that an individual would perform for defendant once hired, due to Castaneda's unfamiliarity with the personnel needs of the various departments. Castaneda Dep. at 64:21-24, 73:13-15.

In assuming responsibilities under the contract, defendant reduced the Triple P&M workforce from thirty-four, the number of individuals working for DLA, to twenty-nine employees. Taylor Dep. at 51:12-21. Unlike plaintiffs, four of the twenty-nine workers hired by defendant (two African-Americans, Raylanda McIntyre and Donald Harrell and two Caucasians, George Whaley and Jeff Deronde) did not work for DLA immediately prior to AKIMA taking over the Triple P&M operations. *Id.* at 59:3-5, 12-17. Former DLA employees not retained by

---

[1] Defendant has not submitted the questionnaire relied upon by Castaneda and Castaneda provided no testimony as to the type of questions posed to applicants during their interview. *See* Castaneda Dep. at 39:8, 10 (explaining the questionnaire had a "bunch of questions," maybe "ten or fifteen").

4

defendant included nearly the same number of blacks as whites. *Id.* at 53:19-21, 54:9-20;[2] Def.'s Reply to Pls.' Resp. to Mot. for Summ. J. ("Def.'s Reply") at 9.

### III. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis of its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party can meet this burden "by showing that there is an absence of evidence to support the nonmoving party's case." *Honor v. Booz-Allen & Hamilton, Inc.*, 383 F.3d 180, 184 (4th Cir. 2004). "[A] complete failure of proof concerning an essential element of [a plaintiff's] case necessarily renders all other factors immaterial." *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The court views the evidence in the light most favorable to the non-moving party, according that party the benefit of all reasonable inferences. *Bailey v. Blue Cross & Blue Shield of Virginia*, 67 F.3d 53, 56 (4th Cir. 1995). However, "conclusory statements, without specific evidentiary support" are insufficient to create a genuine issue of fact for trial. *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998).

---

[2] In particular, defendant did not hire the following DLA employees: Murray, George, Anderson and Vincent Norris (black) and David Baylis, Chris Deres, Bradley Guthrie, Beth Newsome, Alicia Parker (white). Taylor Dep. at 53:18-21, 54:7-8, 11-12.

5

## IV. ANALYSIS

Plaintiffs allege that they were discriminated against on the basis of their race in violation of § 1981 when members of an unprotected class (white race) were hired by defendant for positions to which plaintiffs applied. Compl. ¶¶ 12-15. In order to prevail under § 1981, a plaintiff must prove purposeful discrimination. *General Building Contractors Assn., Inc. v. Pennsylvania*, 458 U.S. 375, 391 (1982). Courts apply the same analysis in evaluating § 1981 claims as that established for Title VII claims. *See e.g., Love-Lane v. Martin*, 355 F.3d 766, 786 (4th Cir. 2004); *see also Patterson v. McLean Credit Union*, 491 U.S. 164, 186 (1989). Accordingly, this court relies on the Title VII framework to analyze plaintiffs' § 1981 claims of unlawful discrimination.

A plaintiff may establish a claim for unlawful discrimination on the basis of race through two avenues of proof: (1) the burden-shifting pretext method, as set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), or (2) the mixed-motive method wherein the plaintiff demonstrates through direct or circumstantial evidence that, even if the reason given by the employer is true, the adverse action was also motivated by racial discrimination. *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284-86 (4th Cir. 2004) (citing *McDonnell Douglas*, 411 U.S. at 807 and *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98-99 (2003)); *see also Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 317-19 (4th Cir. 2005) (recognizing both theories in evaluating Title VII claims). Plaintiffs have presented no direct evidence of race discrimination in this case and have relied on the burden-shifting pretext method. *See* Pls.' Resp. at 4-5.

Under the *McDonnell Douglas* burden-shifting framework, plaintiffs must first establish a *prima facie* case of race discrimination by a preponderance of the evidence. *Tex. Dep't of*

*Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). If plaintiffs establish a *prima facie* case, an inference of discrimination is raised and the burden shifts to defendant to articulate a legitimate, non-discriminatory reason for its decision not to hire plaintiffs. *See id.* at 253. While defendant's burden of production has been described as "light," the showing must consist of admissible evidence. *See id.* Third, if defendant carries its burden, the presumption of discrimination created by the *prima facie* case disappears from the case, and plaintiffs must then prove by a preponderance of the evidence that defendant's articulated reason was a pretext for unlawful discrimination. *See id.* at 253-55. Thus, the burden to demonstrate pretext "merges with the ultimate burden of persuading the court that [plaintiffs] ha[ve] been the victim of intentional discrimination." *Id.* at 256. Accordingly, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Rowe v. Marley Co.*, 233 F.3d 825, 830 (4th Cir. 2000) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000)).

**A.      Plaintiffs have established a *prima facie* case of race discrimination.**

To establish a *prima facie* case of race discrimination in the failure-to-hire context, a plaintiff must prove by a preponderance of the evidence that (1) he belongs to a protected class; (2) he was qualified and applied for a position for which the employer solicited applications; (3) he was denied the position; and (4) the employer subsequently continued to seek applicants with the plaintiff's qualifications, or, as alleged here, filled the position with a white employee.[3] *See*

---

[3] Citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993) and *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996), defendant contends plaintiffs "misstate the *prima facie* case required to establish discriminatory intent...." Def.'s Reply at 2. In particular, defendant avers that plaintiffs fail to "discuss or even mention" whether "the adverse employment action...allegedly suffered *occurred under circumstances that raise an inference of unlawful*

7

*Mallory v. Booth Refrigeration Supply Co.*, 882 F.2d 908, 910 (4th Cir. 1989) (citing *Patterson*, 491 U.S. at 186-87). The burden to establish a *prima facie* case has been recognized as not onerous. *See Burdine*, 450 U.S. at 253.

It is undisputed that plaintiffs are black and that each applied for a Triple P&M position that defendant sought to have filled, and that each was not hired for a position. Each of the plaintiffs possesses prior experience in performing the Triple P&M functions sought to be performed by defendant. Murray, for example, began working for Labat in 2001 and his experience includes d-trash and box shop functions. Murray Dep. at 18:24, 19:2-4, 21:7-10, 22:16-17, 24:23 [DE-26-3]. George began working for Labat in 2002 and his Triple P&M experience includes preservation, d-trash and box shop functions. George Dep. at 14:25, 15:1-3, 23:14, 22, 24:4, 17-20 [DE-26-2]. Finally, Anderson began working for Labat in 2004 and has experience in packing and preserving aircraft parts. Anderson Dep. at 7:9, 23-25, 8:7, 9:22-25, 10:9-12. Each of these job functions continues to be performed by AKIMA. Taylor Dep. at 23:21-22, 39:1-10, 52:18-20.[4] Moreover, there is no evidence in the record of what courts have typically considered job disqualifiers, such as deficient job performance. *See e.g., EEOC*, 243

---

*discrimination.*" *Id.* (emphasis in original). However, "[i]n cases where the position sought was filled, the fourth prong is most easily satisfied by showing that someone outside of the plaintiff's protected group ultimately was selected for the position." *Langerman v. Thompson*, 155 F. Supp. 2d 490, 495 (D. Md. 2001) (citing *EEOC v. Sears Roebuck and Co.*, 243 F.3d 846, 851 (4th Cir. 2001) (fourth prong showing made in failure-to-hire case where defendant continued to seek applicants after rejecting Hispanic male plaintiff and then selected white female)); *see also St. Mary's*, 509 U.S. at 507 (fourth prong showing made in failure-to-promote case where defendant continued to seek applicants after demoting then discharging black male and then filling position with a white male).

[4] While the operations performed in the box shop under AKIMA are "basically the same" as those performed for DLA, Taylor testified that the particular box shop position performed by Murray during his employment with DLA (packing and preserving aircraft blades) is now performed at AKIMA within a different Triple P&M division. Taylor Dep. at 23:21-22, 64:14-21.

8

F.3d at 853 (citing *Montgomery v. John Deere & Co.*, 169 F.3d 556, 559-60 (8th Cir. 1999) (plaintiff's prima facie case was, "at best, weak" where evidence showed that, at the time of termination, job performance was deficient)).

Finally, defendant does not contest plaintiffs' qualifications for the positions sought, but merely states that they were less qualified than the white applicants. Def.'s Mem. at 8; Def.'s Reply at 3. At this point in the analysis, however, plaintiffs must demonstrate that they were qualified for the job for which they applied - not that they were better qualified than those individuals selected. *See Walker v. Mortham*, 158 F.3d 1177, 1190 (11th Cir. 1998) (explaining the relative qualifications of plaintiff and the applicant hired by defendant are to be considered in the second stage of the *McDonnell Douglas* framework, "*not* the prima facie stage") (emphasis in original); *see also Burdine* 450 U.S. at 567 (explaining "comparative evidence is needed" during defendant's rebuttal) (citing *East v. Romine, Inc.*, 518 F.2d 332 (5th Cir. 1975)); *see also Johnson v. City of Charlotte*, 229 F. Supp. 2d 488, 492 (W.D.N.C. 2002) (explaining the plaintiff must "make a showing of better qualifications" at the pretext stage and not as part of the *prima facie* case). Here, plaintiffs had performed the same or similar positions for Labat and DLA that defendant was hiring for its operations and there is no evidence that plaintiffs were performing their jobs deficiently. Drawing all reasonable inferences in favor of and construing the facts in the light most favorable to plaintiffs, the court finds plaintiffs have produced sufficient evidence that each was qualified for the positions for which each applied.

Finally, plaintiffs have submitted evidence that defendant hired William Allard ("Allard"), Alex Johnson ("Johnson") and George Whaley ("Whaley"), white applicants, to fill the positions for which plaintiffs applied and defendant does not contest said evidence. *See* Pls.' Resp. at 8; Aff. of Adam Christopher Mullen ("Mullen Aff.") at 3 (stating Whaley performs

9

work for defendant once performed by Anderson); Restel Aff. at 2 (stating Allard and Johnson perform work for defendant once performed by George and Murray); *see also* Taylor Dep. at 64:11-23 (explaining defendant hired Johnson to perform the box shop position formerly performed by George), Dep. of Alexander Preston Johnson ("Johnson Dep.") at 24:24-25, 25:1 [DE-26-8] (same). Accordingly, plaintiffs have demonstrated they were hired under circumstances giving rise to an inference of unlawful discrimination. *See Langerman*, 155 F. Supp. 2d at 495.

**B.     Defendant's burden of production**

As plaintiffs have met their burden in establishing a *prima facie* case, the court must consider whether defendant has met its burden of "set[ting] forth, through the introduction of admissible evidence," *Burdine*, 450 U.S. at 253, "some legitimate, nondiscriminatory reason" for failing to hire plaintiffs. *McDonnell Douglas*, 411 U.S. at 802. "This burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142 (citing *St. Mary's*, 509 U.S. at 509). In other words, "the defendant need not persuade the court that it was actually motivated by the proffered reasons." *Burdine*, 450 U.S. at 254.

**1.     A genuine issue of material fact exists as to who made the hiring decisions.**

The parties dispute who made the hiring decisions on behalf of defendant. This is a material fact as it relates directly to defendant's burden of producing a non-discriminatory reason for its hiring decision. Plaintiffs assert that Taylor made the decisions as to whom AKIMA should hire for the positions at issue, while defendant counters with the testimony of Casteneda and Taylor, both of whom have testified that Casteneda alone made the hiring decisions.

Howard Restel, a former Labat and DLA and current AKIMA employee, however has offered affidavit testimony that calls into question who made the hiring decisions at AKIMA.

10

Restel Dep. at 6:4-16. Restel testified that during his job interview with AKIMA, Castaneda stated that "he [Castaneda] did not know anything about our mission, so he would only be doing the interviews." Restel Aff. at 1. According to Restel, Castaneda stated further that "he [Castaneda] would not be doing the hiring, and that the box shop would stay as it is." *Id.* Finally, Restel stated that Castaneda told him that "he [Castaneda] was not there to do the hiring, he was just conducting the interviews." *Id.* These statements are not contradicted or otherwise called into question by Restel's deposition testimony. Defendant has not moved to strike the affidavit but objects to the court's consideration of these statements on the grounds that the statements are inadmissible hearsay. Def.'s Reply at 8. However, these statements are admissible and create a genuine issue of material fact precluding summary judgment.

"Generally, an affidavit filed in opposition to a motion for summary judgment must present evidence in substantially the same form as if the affiant were testifying in court." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996). The affidavit must be based upon personal knowledge and contain admissible evidence. Fed. R. Civ. P. 56(e). Thus, the affidavit may not be based on inadmissible hearsay. *See Maryland Highways Contractors Ass'n, Inc. v. Maryland*, 933 F.2d 1246, 1251 (4th Cir. 1991). Conclusory statements set forth in affidavits must also be disregarded. *See Rohrbough v. Wyeth Labs, Inc.*, 916 F.2d 970, 975 (4th Cir. 1990) (affirming trial court's disregard of affidavit which was "nearly entirely conclusory and devoid of specific facts to support his opinion").

A statement is not hearsay if it was made by a party's agent concerning a matter within the scope of the agency or employment and during the existence of the agency or employment. *See* Fed. R. Evid 801(d)(2). Restel's affidavit is sworn and provides a factual basis demonstrating that he is competent to testify as to the statements he attributes to Castaneda

11

during his job interview. Restel has related statements made by Castaneda, AKIMA's only on-site representative at Cherry Point, who was charged with making the transition from DLA to AKIMA and to conduct job interviews of incoming employees. Castaneda's statements qualify as admissions by a party opponent and are therefore considered not to be hearsay. *See* Fed. R. Evid. 801(d)(2); *see also Ruffin v. Shaw Indus., Inc.*, 149 F.3d 294, 301-02 (4th Cir. 1998) (affidavit containing out-of-court statements of manager considered admission by party opponent and admissible). Moreover, Restel's affidavit testimony is probative of a material fact - that is - who was responsible for making the hiring decisions on behalf of AKIMA. Reasonable minds would recognize a dispute between Restel's factual account as to the hiring decisions and that which has been offered by defendant. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985) ("Genuineness means that the evidence must create fair doubt; wholly speculative assertions will not suffice.") (citations omitted), *overruled on other grounds by Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989). A genuine issue of material fact therefore exists as to which individual made the hiring decisions on behalf of AKIMA and for this reason summary judgment cannot be awarded to defendant.

2.  **AKIMA has failed to articulate a legitimate non-discriminatory reason for its hiring decisions.**

Although the court's analysis ends with the conclusion reached above, assuming *arguendo*, that sufficient evidence supports a finding that Castaneda alone made the hiring decisions on behalf of AKIMA, defendant has failed to offer a legitimate non-discriminatory reason for its hiring decisions.

Defendant has provided the following justifications for its hiring decision as to each plaintiff. First, through counsel, defendant has stated its decisions were based solely on the fact

12

that "[plaintiffs] were judged less qualified - nothing more." Def.'s Mem. at 8; *see also* Def.'s Reply at 3 ("Plaintiffs simply applied for jobs but were not hired because they were judged less qualified."); *see Langerman*, 155 F. Supp. 2d at 496 ("The [hiring] of a better qualified applicant is a legitimate and nondiscriminatory reason for preferring the successful applicant over the rejected employee who claims that the rejection was discriminatory.") (citation omitted). Defendant has supported this reason with the application evaluations completed by Castaneda subsequent to each interview. Def.'s Mem. at 7-8. In particular, defendant notes that while Castaneda rated Johnson and Whaley[5] as "good" or "excellent" in the seven categories considered during the interview process, Anderson and George were rated as "average" in all categories but one while Murray was rated as "average" in five of the seven categories. *See* Applicant Evaluations [DE-20-3, Exs. G-K]. Defendant explains further that Castaneda described Johnson as having a "positive attitude" and Whaley as a "good man - keeper." *See* Def.'s Mem. at 8; *see also* Applicant Evaluations [DE-20-3, Exs. G-H]. On the other hand, Castaneda described George as a "wise guy," noted he was "unsure of [Murray's] potential" and placed a question mark under the "comments" section of Anderson's applicant evaluation. *See* Def.'s Mem. at 8; *see also* Applicant Evaluations [DE-20-3, Exs. I-K].

The difficulty in evaluating this evidence is that there is nothing in the record demonstrating that Castaneda based his hiring decisions on these materials. While Castaneda completed an applicant evaluation subsequent to each interview, *see* Applicant Evaluations [DE-20-3, Ex. G-K], he testified that he is unable to recall the decision-making process used in making his hiring decisions and is unsure whether he provided the reasons for his hiring

---

[5] Defendant does not discuss the application evaluation completed for Allard and no such evaluation appears as an exhibit.

13

decisions in writing. Castaneda Dep. at 50:4-10, 20-25. In fact, Castaneda could not recall the reasons plaintiffs were not hired. *Id.* at 46:22-24, 47:3-5, 51:1-3. Defendant's failure to authenticate the applicant evaluations in Castaneda's deposition or affidavit and his failure to verify the reasons for the hiring decisions belie the offered reason that plaintiffs were deemed less qualified.

Defendant states also that plaintiffs were not hired due to a decision to hire fewer employees at AKIMA than were employed by DLA. *See* Def.'s Mem. at 6. In support of this reason, defendant notes a change in functions performed in the box shop from those previously performed under DLA. *Id.* In particular, Defendant has submitted Taylor's deposition wherein Taylor explained the job performed by Murray during his employment with DLA (boxing aircraft blades) is no longer performed in the box shop for defendant. *Id.* at 6 (citing Taylor Dep. at 23:17-22, 64:14-21; Murray Dep. at 29:15-19). Rather, the blades are placed in plastic containers by employees working in a different Triple P&M division. *Id.* However, defendant provides no admissible evidence that its reason for not hiring plaintiffs was due to a reduction in workforce. In fact, Castaneda, who according to defendant was responsible for its hiring decisions, does not mention this reasoning as a basis for the hiring decisions. Moreover, this reason appears to counter defendant's statement that its decision not to hire plaintiffs was based solely on the fact that "[plaintiffs] were judged less qualified - nothing more." Def.'s Mem at 8.

Third, defendant offers the fact that it is a minority-owned company which entrusted its hiring decisions to a minority (Castaneda), who in turn hired a mostly minority workforce. *See* Def.'s Mem. at 6-7. However, the overall makeup of defendant's workforce is not a legitimate, non-discriminatory reason for failing to hire plaintiffs, nor can this evidence raise a negative inference of discrimination. *See Conn. v. Teal*, 457 U.S. 440, 455 (1982) ("It is clear beyond

14

cavil that the obligation imposed by Title VII is to provide an equal opportunity for each applicant regardless of race, without regard to whether members of the applicant's race already proportionately represented in the work force.") (citations omitted); *see also Oncale v. Sundowner Offshore Srvcs.*, 523 U.S. 75, 78 (1998) ("Because of the many facets of human motivation, it would be unwise to presume as matter of law that human beings of one definable group will not discriminate against other members of that group.") (citations omitted). The issue before the court is whether defendant's decision to hire white applicants in lieu of plaintiffs was based on a non-discriminatory reason. Defendant's decision to hire a mostly minority workforce does not equate to an inability to discriminate against particular applicants on the basis of race.

Finally, the court notes plaintiffs' discussion regarding defendant's response in discovery (allegedly unverified and unsigned) to an interrogatory requesting defendant to "[s]tate each an every reason why the defendant did not hire each of the plaintiffs." *See* Pls.' Resp. at 14-15.[6] In particular, according to plaintiffs, defendant responded that plaintiffs were not hired based on plaintiffs' resumes, interview scores and training compared to those of other applicants, in addition to plaintiffs' attendance records. *Id.* at 14. However, as discussed by plaintiffs, defendant fails to mention these reasons in its memorandum or to identify admissible evidence supporting said reasons. *Id.* at 16; *see Burdine*, 450 U.S. at 256 n.9 ("An articulation not admitted into evidence will not suffice. Thus, the defendant cannot meet its burden merely...by argument of counsel."). As defendant has failed to offer through admissible evidence a legitimate non-discriminatory reason for its hiring decisions, the court finds that defendant has failed to meet its burden of production.

---

[6] Responses to discovery have not been submitted to the court but were included only by reference in plaintiffs' response brief. *See* Pl.s' Resp. at 14-15.

15

## CONCLUSION

For the reasons stated above, this Court RECOMMENDS defendant's motion for summary judgment be DENIED.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have ten (10) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

This, the 6th day of November, 2008.

_____
Robert B. Jones, Jr.
United States Magistrate Judge