IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:07-CV-175-FL

| | | |
|---|---|---|
| CLAUDE MURRAY, JEREMY GEORGE, and KEVIN ANDERSON, | ) ) ) | |
| Plaintiffs, | ) ) | ORDER |
| v. | ) ) ) | |
| AKIMA CORPORATION, | ) ) | |
| Defendant. | ) | |

This matter comes before the court upon defendant's motion for summary judgment (DE # 18), with benefit of memorandum and recommendation ("M&R") from United States Magistrate Judge Robert B. Jones, Jr., recommending that the motion be denied. Defendant filed objections to the M&R, to which plaintiffs did not respond. In this posture, the issues are ripe for ruling.

## BACKGROUND

Plaintiffs Claude Murray ("Murray"), Jeremy George ("George") and Kevin Anderson ("Anderson") filed complaint on October 26, 2007, alleging defendant AKIMA Corporation ("defendant") discriminated against them on the basis of race in violation of 42 U.S.C. § 1981. Plaintiffs are black males. Defendant answered on November 26, 2007, and moved for summary judgment on June 2, 2008. After allowing for briefing on defendant's motion, this court referred the matter to United States Magistrate Judge Robert B. Jones, Jr. for recommendation. Magistrate Judge Jones entered M&R on November 6, 2008, recommending that defendant's motion for summary judgment be denied. The M&R extensively and adeptly recounts the underlying facts of this case;

as parties do not object to this statement of the facts, the court incorporates it as its own.

## DISCUSSION

**I.     Standard of Review**

The court may "designate a magistrate judge to conduct hearings . . . and to submit to a judge of the court proposed findings of fact and recommendations for the disposition" of a variety of motions, including motions for summary judgment. 28 U.S.C. § 636(b)(1)(A)-(B). Upon careful review of the record, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). The court is obligated to make *de novo* determinations as to those portions of the M&R to which objections have been filed. Id.; see also Camby v. Davis, 718 F.2d 198, 199 (4th Cir. 1983).

Summary judgment is appropriate, under Federal Rule of Civil Procedure 56(c), "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Materiality of facts is determined by the substantive law governing a case. Id. For a factual dispute to be genuine, there must be sufficient evidence for a reasonable jury to be able to return a verdict for the nonmoving party. Id. "The mere existence of a scintilla of evidence" supporting the nonmoving party's position is insufficient to survive summary judgment. Id. at 252.

In deciding a motion for summary judgment, the court construes evidence in the light most favorable to the nonmoving party and draws all reasonable inferences in the nonmovant's favor. Anderson, 477 U.S. at 255. A party seeking summary judgment "bears the initial responsibility of

informing the district court of the basis for its motion, and identifying those portions of the [record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "set forth specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (quoting Fed. R. Civ. P. 56(e)).

**II.    Analysis**

   **A.    The McDonnell Douglas Burden-Shifting Framework**

Plaintiffs allege defendant discriminated against them in violation of 42 U.S.C. § 1981. Courts evaluate these claims under the same standard of proof as discrimination actions under Title VII of the Civil Rights Act of 1964. Holder v. Raleigh, 867 F.2d 823, 828 (4th Cir. 1989). If a plaintiff does not offer direct evidence that the adverse action was motivated by racial discrimination, plaintiff may still establish a claim for unlawful discrimination through the burden-shifting pretext method, as set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). That opinion, and subsequent decisions interpreting it, have "established an allocation of the burden of production and an order for the presentation of proof in . . . discriminatory-treatment cases." St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).

Under the McDonnell Douglas framework, a plaintiff must first establish a *prima facie* case of discrimination. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 142 (2000). If plaintiff succeeds in doing so, an inference of discrimination is raised and the burden shifts to defendant to produce evidence that the plaintiff was rejected, or someone else was preferred, for a "legitimate, nondiscriminatory reason." Id. This is a burden of production, not persuasion, and so it involves no credibility assessment. Id. If the defendant carries this burden, the presumption of

3

discrimination disappears, and plaintiff must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were pretext for discrimination." Id. at 143. The burden to demonstrate pretext "merges with the ultimate burden of persuading the court that [plaintiff] has been the victim of intentional discrimination." Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 256 (1981). As such, "a plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." Rowe v. Marley Co., 233 F.3d 825, 830 (4th Cir. 2000) (citing Reeves, 530 U.S. at 148).

### B. Defendant's objections to the M&R

#### 1. Plaintiff's *Prima Facie* Case

Defendant first objects that the M&R applied the wrong test for determining whether plaintiffs have established a *prima facie* case of race discrimination and thus placed the burden on defendant to show a legitimate, non-discriminatory reason for its actions. The M&R states that to establish a *prima facie* case, a plaintiff must show "(1) he belongs to a protected class; (2) he was qualified and applied for a position for which the employer solicited applications; (3) he was denied the position; and (4) the employer subsequently continued to seek applicants with the plaintiff's qualifications, or, as alleged here, filled the position with a white employee." (M&R, p. 7.) Defendant contends, however, under Fourth Circuit precedent the fourth prong of the test for establishing a *prima facie* requires a plaintiff show he "was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." (Deft's Obj. p. 5.)

The language the courts have used when reciting this fourth element varies substantially. In McDonnell Douglas, the Supreme Court framed the fourth element as requiring a showing that "after

4

[plaintiff's] rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 411 U.S. at 802. The language suggested by defendant appears in several Fourth Circuit opinions. See, e.g. Evans Tech. Applications & Serv. Co., 80 F.3d 954, 959-60 (4th Cir. 1996) (requiring plaintiff to show he "was rejected for the position under circumstances giving rise to an inference of unlawful discrimination"); Carter v. Ball, 33 F.3d 450, 458 (requiring same). Defendant's objection is ultimately inconsequential here, as the very cases defendant cites make clear that a showing that the employer subsequently continued to seek applicants with the plaintiff's qualifications or filled the position with someone outside plaintiff's protected group constitutes a showing that the plaintiff "was rejected for the position under circumstances giving rise to an inference of unlawful discrimination." See Evans Tech. 80 F.3d at 960 (finding that female plaintiff's showing that a man was promoted rather than her satisfied this element for a sex discrimination claim); Carter, 33 F.3d at 458 ("To satisfy the fourth prong, [plaintiff] need only show that the position was filled by a white applicant."); see also Langerman v. Thompson, 155 F. Supp. 2d 490, 495 (D. Md. 2001) (holding that fourth element required showing that plaintiff "was rejected under circumstances giving rise to an inference of unlawful discrimination," and stating that "the fourth prong is most easily satisfied by showing that someone outside of the plaintiff's protected group ultimately was selected for the position.") Accordingly, the M&R did not err in defining the fourth element of the *prima facie* showing as it did.[1]

Defendant also objects on the grounds that the undisputed facts show that plaintiffs have not

---

[1] If anything, the language used in the M&R makes it more difficult to establish a *prima facie* case than would the language cited by defendant, as the phrase "under circumstances giving rise to an inference of unlawful discrimination" encompasses all activity that would qualify under the test in the M&R and presumably other activity as well.

5

met their burden of establishing a *prima facie* case. Defendant contends that the M&R erred in finding that plaintiffs submitted evidence that defendant hired three white applicants to fill the positions for which plaintiffs applied, and thus have not satisfied the fourth element of the test. Before defendant took over the functions of the packing, preservation, packaging and marketing ("Triple P&M") at the Defense Distribution Depot, those services were provided by the Defense Logistics Agency ("D.L.A."). The D.L.A. employed the three plaintiffs in its Triple P&M operations, but when defendant took over, all D.L.A. employees were required to reapply for the job. Plaintiffs are three of the nine D.L.A. employees who were not kept on by defendant. Defendant contends that as the size of the Triple P&M group went from 34 employees under D.L.A. to 29 employees under defendant, plaintiffs cannot prove that anyone was hired instead of them, much less someone who is not a member of a minority group.

Plaintiffs' complaint alleges that defendant hired white applicants to fill the positions for which plaintiffs applied. (Compl. ¶¶ 12-15.) The court finds plaintiffs have submitted sufficient evidence to meet their burden of production in supporting this claim. With regard to plaintiff Anderson, Adam Christopher Mullen, an employee for D.L.A. who remained on when defendant took over Triple P&M, testified via affidavit that George Whaley, a white male, started working for defendant on the first day it took over operations, "doing the work that Kevin Anderson had been performing with D.L.A." (Mullen Aff., p. 3, DE # 25-3.) With regard to plaintiffs George and Murray, Howard Restel, an employee for defendant, testified that "after AKIMA took over, William Allard and Alex Johnston [sic] began performing the work that Jeremy George and Claude Murray had been performing under D.L.A." (Restel Aff., p. 2, DE # 25.) Both William Allard and Alex Johnson are white males. (Taylor Dep., pp. 24-25, DE # 26-5.) As all D.L.A. employees who

6

wished to be employed with Triple P&M when defendant took over had to undergo the job application process, the court considers even those employees who had worked in Triple P&M under D.L.A. to have been "hired" by defendant when defendant took over. (Castaneda Aff., ¶¶ 3-6, Ex. C., DE # 20-2.) Accordingly, through these affidavits, plaintiffs have satisfied their burden of production in showing the positions they applied for were filled by white applicants, and thus satisfied element four of establishing a *prima facie* case.

Defendant also contends that plaintiffs have not submitted any admissible evidence showing they were qualified for the positions they sought, and thus the M&R erred in finding plaintiffs had satisfied element two. Much of the law defendant cites concerns the extent to which a court may review an employer's decision as to who of several job applicants is the most qualified. The relative qualifications of applicants, however, are irrelevant for the purposes of establishing a *prima facie* case.[2] At this stage, plaintiffs' only burden is to show that they were qualified for the position for which they applied. See Johnson v. City of Charlotte, 229 F. Supp. 2d 488, 492 (W.D.N.C. 2002) (holding that a showing that plaintiff was better qualified than the person who was awarded the job may be necessary to show pretext, but is not required at the *prima facie* stage).

Defendant argues that the only evidence plaintiffs offer as to their qualifications are the subjective assessments of themselves and coworkers. The court does not agree. Before defendant took over Triple P&M, plaintiffs were employed by D.L.A. in the same capacity they applied for with defendant. There is no evidence they were performing their jobs deficiently. Furthermore,

---

[2] The cases defendant cites acknowledge that comparing the qualifications of the plaintiffs and the employees who filled the position for which plaintiffs applied is part of the second and third steps of analysis under the McDonnell Douglas framework. See, e.g. Evans v. Tech. Applications & Serv. Co., 80 F.3d 954, 960 (4th Cir. 1996) (stating that "relative employee qualifications are widely recognized as valid, non-discriminatory bases for any adverse employment decision" and that in order to show such explanation by an employer is pretextual, "plaintiff must establish that she was the better qualified candidate for the position sought").

7

plaintiffs have submitted letters of recommendation from their supervisors at D.L.A. attesting to their abilities to perform their functions and their qualities as hard workers. (DE # 24-5.) Thus, the court finds plaintiffs have presented sufficient evidence showing they were qualified for the positions for which they applied.

Having reviewed those findings in the M&R that defendant objected to *de novo*, and after careful consideration of all the elements of a *prima facie* case of discrimination, the court finds plaintiffs have presented sufficient evidence to satisfy their burden of production in establishing a *prima facie* case.

### 2. Legitimate, nondiscriminatory reasons for defendant's hiring decisions

Having determined plaintiff established a *prima facie* case, the M&R moved on to the second step of the McDonnell Douglas analysis: whether defendant has articulated a legitimate, nondiscriminatory reason for failing to hire the plaintiffs. Defendant objects to the M&R's finding that defendant failed to do so.

In order to rebut the presumption of discrimination that arises when a plaintiff establishes a *prima facie* case, the defendant must "clearly set forth, through the introduction of admissible evidence, the [legitimate, nondiscriminatory] reasons for the plaintiff's rejection." Burdine, 450 U.S. at 254-55. At this stage, the defendant "need not persuade the court that it was actually motivated by the proffered reasons," as its burden is one of production rather than persuasion. Id. at 254. In other words, "the determination that a defendant has met its burden of production (and has thus rebutted any legal presumption of intentional discrimination) can involve no credibility assessment[,] [f]or the burden-of-production determination necessarily precedes the credibility assessment stage." St. Mary's, 509 U.S. at 509; see also Moore v. Mukasey, 2008 WL 5424083, *4 (4th Cir. Dec. 30,

2008) (holding that to satisfy second step of McDonnell Douglas framework, employer "need only articulate reasons for its actions which, *if believed by the trier of fact*, would support a finding that unlawful discrimination was not the cause of the employment action.") (emphasis in original).

Defendant contends that it has met its burden of production "by articulating circumstances demonstrating the hiring decision was not in any way discriminatory." (Deft's Obj. p. 10.) Specifically, defendant asserts: (1) defendant hired five fewer individuals than previously were working in the box shop; (2) defendant is wholly owned by a minority parent corporation whose mission is to promote diversity and the employment of other minorities; (3) defendant has hired a predominantly minority workforce; and (4) defendant found the white applicants identified by plaintiffs to have performed better on their interviews than plaintiffs. (Id.) Defendant misstates its burden. Defendant's burden at stage two the McDonnell Douglas framework is not to "articulate circumstances demonstrating the hiring decision was not in any way discriminatory" but rather to articulate legitimate, nondiscriminatory reasons for not hiring plaintiffs. Of the arguments offered by defendant, only (1) and (4) can be construed as "reasons" for not hiring plaintiffs. The assertions that defendant is owned by a minority parent corporation that promotes diversity and has hired a predominantly minority workforce are relevant to the issue of pretext and the ultimate question of whether defendant intentionally discriminated against the plaintiffs, but are not relevant at the present stage of the analysis. See McDonnell Douglas Corp. 411 U.S. at 805 ("Other evidence that may be relevant to any showing of pretext includes facts as to the . . . petitioner's general policy and practice with respect to minority employment.")

With regard to reasons (1) and (4), defendant has produced sufficient evidence that these were legitimate, nondiscriminatory reasons for its decision not to hire plaintiffs to meet its burden

9

Case 4:07-cv-00175-FL   Document 33   Filed 03/12/09   Page 9 of 17

of production. Whether these reasons were the actual reasons for defendant's actions is not the test at this stage of the analysis; the defendant must only set forth these reasons through admissible evidence in order to rebut the presumption of discrimination created by plaintiff's *prima facie* case. With regard to the interview scores, defendant has submitted evidence in the form of interview reports that indicates the employees who plaintiffs allege were hired in their stead received higher scores than plaintiffs. (Exs. G, H, I, J, K, DE # 20-3.) With regard to the reduction in work force, defendant has submitted evidence that D.L.A. employed 34 people for Triple P&M operations and when defendant took over it only hired 29. (Taylor Dep., p. 51.)[3]

Accordingly, the court finds that defendant has articulated legitimate, non-discriminatory reasons for denying plaintiffs' applications, and does not adopt the M&R's finding to the contrary. Satisfying stage two of the analysis does not mean defendant is entitled to summary judgment; rather, the presumption of discrimination disappears and the court must take up the third step of the analysis. St. Mary's, 509 U.S. at 507-08.

### 3. Pretext for Discrimination

In order for plaintiffs to prevail in this case, they must prove that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Reeves, 530 U.S. at 143. At trial, this burden "merges with the ultimate burden of persuading the court that [plaintiff] has been the victim of intentional discrimination." Burdine, 450 U.S. at 256. "The general standards for summary judgment naturally inform any assessment of whether a plaintiff has

---

[3] In Section II.B.1 of this order, the court holds that a showing of a reduction in work force is not sufficient to establish as a matter of law that white applicants were not hired for the positions for which plaintiffs applied, particularly in light of affidavits submitted that state otherwise. This is not inconsistent with the court's holding here that evidence showing a reduction in work force satisfies defendant's burden of production of articulating a legitimate, nondiscriminatory reason for rejecting plaintiff's application.

10

provided sufficient evidence of pretext such that her case may proceed to trial." Hux v. City of Newport News, Va., 451 F.3d 311, 315 (4th Cir. 2006). Thus, "the plaintiff cannot seek to expose [defendant's] rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it." Id. The former would fail to create a genuine dispute of fact, and the latter would fail to create one that is material. Id.

At one time, the Fourth Circuit required the plaintiff to present evidence both that the employer's articulated reasons were pretextual and that the employer's true reason was discriminatory in order to survive summary judgment, a standard that has been referred to as the "pretext-plus" approach. See, e.g. Vaughan v. Metrahealth Cos., 145 F.3d 197, 202 (4th Cir. 1998). In Reeves, however, the Supreme Court held that a plaintiff's claim that establishes only a *prima facie* case and pretext *may be* sufficient to overcome summary judgment, noting that it was "permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." 530 U.S. at 147. The Court went on to state, "[O]nce the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." Id.

Pursuant to the Supreme Court's holding in Reeves, the Fourth Circuit has retreated from the requirement that in all cases the plaintiff must produce "additional, independent evidence of discrimination" to survive summary judgment. See, e.g. Rowe v. Marley Co., 233 F.3d 825, 830 (4th Cir. 2000). Accordingly, if plaintiffs demonstrate a *prima facie* case and pretext, their claims should be submitted to the jury unless "no rational factfinder could conclude that the action was discriminatory." Id. The Court's opinion in Reeves expands on this point:

11

> Certainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred.

530 U.S. at 148.

Defendant first points to the reduction in the Triple P&M workforce from 34 employees to 29 employees when defendant took over as a non-discriminatory reason for its decision not to hire plaintiffs. (See Taylor Dep. p. 51.) Taken on its face, this could be a non-discriminatory reason for defendant's action. However, as previously discussed, plaintiffs have presented substantial evidence that other employees were retained to do the jobs plaintiffs had performed under D.L.A.[4] And so even taking the reduction in workforce into consideration, it remains to be explained why defendant hired those employees for these positions and rejected plaintiffs.[5] The only nondiscriminatory reason defendant offers is the applicants' evaluation scores from their interviews

Plaintiffs have cast considerable doubt on defendant's assertion that plaintiffs were not hired because of their interview scores. The only evidence in the record to support defendant's assertion

---

[4] See Section II.B.i.

[5] It is evident through defendant's filings that defendant recognizes that the department's reduction in staffing is not sufficient to defeat plaintiffs' discrimination claims on summary judgment. Defendant argues in support of its motion for summary judgment that plaintiffs "simply applied for jobs but were not hired because they were judged less qualified – nothing more." (Deft's Mem. in Supp. of Mot. for S.J., p. 8.) Furthermore, defendant did not even include reduction of work force in its list of responses to plaintiff's interrogatory that instructed defendant to "[s]tate each and every reason why defendant did not hire each of the plaintiffs." (Pl's Response, p. 14.); see also Siraj v. Hermitage in Northern Va., 51 Fed. Appx. 102, 111 (4th Cir. 2002) ("[T]he fact that [defendant] shifted its stated reason for discharging [plaintiff] over time is further proof that [defendant's] proffered reason for [plaintiff's] discharge is unworthy of credence.")

is the interview reports themselves.[6] There is no documentation from the time the hiring decisions were made that the interview scores were relied upon.[7] More significantly, Wilbert Castaneda, defendant's employee who conducted the interviews, and whom defendant asserts made the hiring decisions, does not claim the interview scores were a basis for his decision, stating only that he does not remember why he did not hire plaintiffs. (Castaneda Dep., pp. 46-51, DE # 26-4.) The Fourth Circuit has held that an employer's failure to offer a reason for its decision until long after the action is evidence of pretext. See EEOC v. Sears Roebuck and Co., 243 F.3d 846, 853 (4th Cir. 2001) ("Moreover, a factfinder could infer from the late appearance of [defendant's] current justification that it is a post-hoc rationale, not a legitimate explanation for [defendant's] decision not to hire [plaintiff]."); see also Dennis v. Columbia Colleton Medical Center, Inc 290 F.3d 639, 647 (4th Cir. 2002) ("The fact that an employer has offered inconsistent post-hoc explanations for its employment decisions is probative of pretext."). In a situation such as this, where the explanation is offered only through defense counsel and not by the actual decision-maker, the inference of pretext is even stronger.

Moreover, plaintiffs present additional evidence that tends to show defendant's "interview scores" explanation is false. Indeed, there is a genuine issue of material fact as to whether Castaneda even made the hiring decision. Howard Restel, an employee for defendant, testified via affidavit that his interview was very short, and during the interview Castaneda told him that "he [Castaneda] did

---

[6] These applicant evaluation forms rank plaintiff Anderson and plaintiff George as "average" in all but one of the seven categories evaluated, while plaintiff Murray received an "average" ranking in five of the seven categories. Johnson and Whaley received "good" or "excellent" in all seven categories. Defendant does not discuss an applicant evaluation form for Allard, and one has not been submitted as an exhibit. (See M&R p. 13.)

[7] In fact, defendant does not even produce an evaluation application for Allard, who was hired by defendant and performs the work plaintiff George and plaintiff Murray performed under D.L.A. (Restel Aff. p. 2.)

13

not know anything about our mission, so he would only be doing the interviews. . . . [and] he would not be doing the hiring." (Restel Aff. p. 1.)[8] Bradley Guthrie was employed by D.L.A. and interviewed with Castaneda. Guthrie testified that Castaneda told him there was no part-time work available and so he left the interview, only to be offered a part-time position by David Taylor, another AKIMA employee, a few days later. (Guthrie Aff,. p. 1, DE # 25-2.) Defendant contends in its objections to the M&R that whether Castaneda or Taylor made the hiring decision is not material. In light of the fact that there is no evidence indicating Taylor attended these interviews, the court disagrees. If Taylor did indeed make these hiring decisions without attending the interviews, that serves as further evidence that defendant's "interview performance" justification for its hiring decisions is pretextual. For all the discussed reasons, the court determines plaintiffs have made a substantial showing that defendant's proffered justifications for not hiring plaintiffs are false.

As plaintiffs have produced sufficient evidence to establish a *prima facie* case and demonstrate that defendant's asserted nondiscriminatory reasons are pretextual, it is left to the court to determine whether this scenario is one that should proceed to trial even in the absence of additional, independent evidence of discrimination. Under Reeves, the case must so proceed unless "no reasonable factfinder could conclude that the action was discriminatory." Rowe, 233 F.3d at 830.

The circumstances here are similar to those before the Fourth Circuit in EEOC v. Sears Roebuck and Co., a discrimination case in which the district court granted summary judgment for the defendant and the Court of Appeals reversed in light of Reeves. 243 F.3d 846 (4th Cir. 2001).

---

[8] As discussed in the M&R, Castaneda's statements to Restel are admissions by a party opponent and thus considered not to be hearsay. (See M&R pp. 11-12).

Here, as in Sears Roebuck, defendant asserts that plaintiffs have not offered direct evidence of discriminatory animus on the part defendant. In response to that argument, the Fourth Circuit stated, "Since no direct evidence of animus is necessary to prove employment discrimination, its absence hardly compels a factfinder to conclude that the employer did not discriminate." Id. at 855.

Much like the defendant in Sears Roebuck, defendant here relies heavily on evidence that tends to show defendant's general nondiscriminatory employment practices. Castaneda testified at deposition that more than half of the applicants he hired were minorities, and of those, the majority were black. (Castaneda Dep., pp. 72-73.) Defendant has also produced evidence showing that when defendant took over Triple P&M operations, of the four employees who were hired that had not worked under D.L.A., two were black and two were white. (Taylor Dep., p. 59.) In addition, defendant has produced evidence that of the former D.L.A. employees who were not retained by defendant, four were black and five were white. (Taylor Dep., pp. 53-54.) The significance of this last statistic for the purposes of summary judgment is minimal, however, as an employee of defendant testified that, "[t]he only [former D.L.A.] white male employees that were not hired by Akima were the employees who voluntarily decided they did not want to take the position," and the court must construe the evidence in the light most favorable to the plaintiffs. (Mullen Aff., p. 2.)

While these statistics are probative evidence tending to show that defendant does not engage in discrimination, they are not sufficient to show "no reasonable factfinder could conclude that the action was discriminatory." Defendant in Sears Roebuck presented similar evidence, to which the court responded, "[S]imply because [defendant] hired other Hispanic individuals in other departments does not mean that its failure to hire [plaintiff] was free from discriminatory intent." 243 F.3d at 855. This is consistent with long-held precedent regarding such evidence in the context

15

of discrimination claims. See, e.g. Connecticut v. Teal, 457 U.S. 440, 454-55 (1982) ("[T]he obligation imposed by Title VII is to provide an equal opportunity for each applicant regardless of race, without regard to whether members of the applicant's race are already proportionately represented in the work force.") As in Sears Roebuck, the statistical evidence presented here may ultimately be relied on by the trier of fact in returning a verdict for defendant, but it does not compel the grant of summary judgment for defendant. 243 F.3d at 855-56.

This case is a close one. Indeed, if the "pretext plus" requirement that the Fourth Circuit applied prior to Reeves still governed, defendant would be entitled to summary judgment. However, in light of the Fourth Circuit's reversal of the district court in Sears Roebuck, the court must deny summary judgment here. The record does not conclusively reveal some other nondiscriminatory reason for the employer's action other than those articulated by the defendant and addressed by the plaintiffs. See Reeves, 530 U.S. at 148. Nor is this the situation where plaintiffs create only a weak issue of fact as to whether the defendant's assertions are untrue and there is abundant and uncontroverted evidence that no discrimination occurred. See id. Plaintiff has made a strong *prima facie* showing and presented considerable evidence of pretext casting serious doubt on the defendant's articulated reasons for its action. Furthermore, while "there is no additional evidence indicating that unlawful discrimination is the true reason for the employer's decision, there is also no evidence that precludes such a finding." Sears Roebuck, 243 F.3d at 857. Accordingly, plaintiffs' claims must proceed to trial.

16

## CONCLUSION

Defendant's motion for summary judgment (DE #18) is DENIED. Except as otherwise provided herein, the court adopts the findings of fact and conclusions of law in the M&R.

SO ORDERED, this the 11th day of March, 2009.

_____
LOUISE W. FLANAGAN
Chief United States District Court Judge

17